**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lucio PINA–JAIME, aka Lucio Pina**
**Jaime; aka Lucio Jaime Pina,**
**Defendant–Appellant.**

No. 01–50063.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Filed June 6, 2003.

**610**

Firdas F. Dordi, Deputy Federal Public Defender, Los Angeles, CA, for the defendant-appellant.

Jennifer Corbet, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Before PREGERSON, THOMPSON, and WARDLAW, Circuit Judges.

**OPINION**

DAVID R. THOMPSON, Senior Circuit Judge.

Lucio Pina–Jaime appeals his conviction by guilty plea to being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a)(2). Pina–Jaime was paroled[1] into the United States for one day, but stayed for 29 months. We affirm his conviction because a previously deported alien who is paroled into the United States for a specified term of which he is aware incurs criminal liability under the "found in" clause of 8 U.S.C. § 1326(a)(2) if he voluntarily chooses to remain in this country after the term of his parole has termi-

nated. We also affirm Pina–Jaime's sentence.

**I.**

Pina–Jaime was born in Mexico and is not a United States citizen. In 1991, he sustained two felony convictions while in this country. Since then he has been deported from the United States four times, the last being in May 1997.

On September 17, 1997, the Immigration and Naturalization Service ("INS") paroled Pina–Jaime into the United States for one day so that he could attend a child custody hearing for his daughter. The INS explicitly "[w]arned" Pina–Jaime, in writing, that he was "authorized to stay in the U.S. only" for the day of September 17, 1997, and that "[t]o remain past this date, without permission from immigration authorities, is a violation of the law." Thus, Pina–Jaime's one-day parole provided for automatic termination, and he was notified of that fact.[2] In spite of this, Pina–Jaime voluntarily chose to remain in the United States, and did not return to Mexico. In 1999, he sustained a third felony conviction.

On February 15, 2000, the INS learned that Pina–Jaime was still in this country. He was charged with and pleaded guilty to being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a)(2). At his plea hearing, the government stated it would prove that he was an alien, that he had been deported four times, that he had been convicted of three felonies, and that he was found in the United States on February 15, 2000, at which time he did not have the consent of the Attorney Gen-

---

1. Parole is "the legal fiction whereby an alien is allowed to be physically present in the United States for a specific purpose." *Barney v. Rogers*, 83 F.3d 318, 320 n. 1 (9th Cir. 1996).

2. INS regulations provide that an alien's parole may be terminated either automatically or upon written notice to the alien. 8 C.F.R. § 212.5(e).

eral to be in this country. The district court asked defense counsel whether "the fact that he did not leave after one day" was sufficient to sustain a conviction under 8 U.S.C. § 1326(a)(2). Defense counsel said she believed it was. The court then asked Pina–Jaime if he had permission to be in the United States for only one day and if he stayed in the country longer than that. He responded "[y]es."

Before entering the guilty plea, the district court also asked defense counsel if she "believed there is a factual basis for the plea [Pina–Jaime] is entering today." Defense counsel responded, "Yes, I do." After finding that the guilty plea had a factual basis and that Pina–Jaime was entering it "competently and voluntar[ily]," the district court accepted the plea. The court sentenced him to 70 months in prison based in part on his prior felony convictions.

On appeal, Pina–Jaime argues that the district court violated Federal Rule of Criminal Procedure 11(f) ("Rule 11(f)") by failing to ensure that his conduct violated the statute under which he was charged. He contends that he did not violate 8 U.S.C. § 1326(a)(2) because he had the Attorney General's consent to enter the United States on September 17, 1997, and he did not enter the country illegally. He also contends that his sentence is improper under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because his prior convictions were not proved to a jury.

## II.

We review for plain error alleged Rule 11(f) violations that were not raised in the district court.[3] *Unites States v. Vonn*, 535 U.S. 55, 58–59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); *United States v. Jimenez–Dominguez*, 296 F.3d 863, 865–66 (9th Cir. 2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 984, 154 L.Ed.2d 905 (2003). We review de novo whether the district court violated the constitutional rule articulated in *Apprendi*. *United States v. Arellano–Rivera*, 244 F.3d 1119, 1127 (9th Cir.2001), *cert. denied*, 535 U.S. 976, 122 S.Ct. 1450, 152 L.Ed.2d 392 (2002).

## III.

■ We first consider Pina–Jaime's Rule 11(f) argument. We begin with the text of 8 U.S.C. § 1326(a)(2). *See United States v. Romo–Romo*, 246 F.3d 1272, 1274 (9th Cir.2001). A deported alien violates 8 U.S.C. § 1326(a)(2) if he "enters, attempts to enter, or is at any time found in" the United States unless "the Attorney General has expressly consented to such alien's reapplying for admission[.]" 8 U.S.C. § 1326(a)(2). Pina–Jaime pleaded guilty to a violation of the "found in" clause of the statute. In this appeal, he first contends there is no factual basis for his plea because he had the Attorney General's consent to enter the United States on September 17, 1997. We disagree.

The INS's one-day parole[4] did not constitute consent for Pina–Jaime to reapply for admission. The INS has promulgated regulations that govern the process by

---

3. Although Pina–Jaime failed to raise the Rule 11(f) argument in the district court, to the extent he is contending that his conduct did not violate the statute under which he was convicted, the issue he asserts is not waived. *United States v. Errol D.*, 292 F.3d 1159, 1165 (9th Cir.2002); *United States v. Foster*, 165 F.3d 689, 691 (9th Cir.1999).

4. The INS is the Attorney General's agent for immigration matters. *United States v. Blanco–Gallegos*, 188 F.3d 1072, 1075 (9th Cir.1999). The permission given by the INS to Pina–Jaime is imputed to the Attorney General. *Id.*

which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. § 212.2. These regulations include the requirement that a deported alien must have remained outside of the United States for a minimum of five consecutive years. *Id.* § 212.2(a). Pina–Jaime did not meet this requirement. Nor did he submit the required form I–212 to the INS to obtain consent of the Attorney General to reapply for admission. *See United States v. Sanchez–Milam*, 305 F.3d 310, 312–13 (5th Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 932, 154 L.Ed.2d 834 (2003). Accordingly, the Attorney General did not "expressly consent[ ] to [Pina–Jaime's] reapplying for admission" as required by the statute. *See* 8 U.S.C. § 1326(a)(2).

Pina–Jaime argues that, in any event, he had the INS's permission to return to the United States, albeit for only a day, and that as a result he did not enter the United States illegally; thus, he contends, his conviction for being "found in" the United States cannot stand. We reject this argument because it relies upon the false premise that there must be an illegal entry to support a conviction under the "found in" clause of 8 U.S.C. § 1326(a)(2). We have suggested, although never held, that a deported alien does not have to enter this country illegally to satisfy the "found in" clause of 8 U.S.C. § 1326(a)(2). *See, e.g., United States v. Parga–Rosas*, 238 F.3d 1209, 1213 (9th Cir.2001) ("Alleging that the defendant is a deported alien subsequently found in the United States without permission suffices."); *United States v. Corona–Garcia*, 210 F.3d 973, 978 n. 3 (9th Cir.2000) ("Notably absent from [8 U.S.C. § 1326(a)(2)] is any inclusion of, or reference to, 'illegal entry.' "). Today, we make clear that an alien does not have to enter the United States illegally to violate the "found in" clause of 8 U.S.C. § 1326(a)(2).

It is true we have stated that "the crime of being 'found in' the United States commences with the illegal entry." *United States v. Ruelas–Arreguin*, 219 F.3d 1056, 1061 (9th Cir.2000). Similar language appears in *United States v. Reyes–Pacheco*, 248 F.3d 942, 946 (9th Cir.2001), *United States v. Pacheco–Medina*, 212 F.3d 1162, 1166 (9th Cir.2000), *United States v. Hernandez*, 189 F.3d 785, 789 (9th Cir.1999), and *United States v. Ayala*, 35 F.3d 423, 425 (9th Cir.1994). In each of these cases, however, the alien had in fact entered or attempted to enter this country illegally. None of the cases involved a paroled alien who voluntarily chose to remain in this country after the specified term of his or her parole had terminated. It is Pina–Jaime's volitional stay in the United States, following termination of the specified term of his parole, of which he had knowledge, that distinguishes this case from those in which there was an illegal entry *ab initio. Cf. United States v. Quintana–Torres*, 235 F.3d 1197, 1199–1200 (9th Cir.2000) ("[V]oluntarily remaining in the country after an involuntary entry satisfies [8 U.S.C. § 1326(a)(2)].").

Nor is Pina–Jaime's cause aided by cases in which we have commented that, in the immigration context, a person who is paroled into the United States is considered not to have entered the country. *See* Barney, 83 F.3d at 320 n. 1 ("[A paroled] alien is not deemed to have 'entered' the United States as that term is used in … the Immigration and Nationality Act."); *Parga–Rosas*, 238 F.3d at 1213 (noting that there is a "legal fiction that entry is not accomplished until a person is free from official restraint," and that "re-entry is part of being 'found in' the United States and is embedded in the 'found in' offense[.]") (internal quotations omitted). These cases involved aliens who were never free from official restraint while in the United States. *See, e.g., Pacheco–Medina,*

212 F.3d at 1166 ("[I]t is apodictic that Pacheco cannot have been found in a place he did not succeed in entering. He never once got himself into our free air; he was, rather, under official restraint the whole time because he was found before he got in."). In the present case, Pina–Jaime was free from official restraint for roughly two years, and during that time he voluntarily chose to remain in this country knowing the specified term of his parole had terminated. We conclude that the district court correctly determined that all elements to support Pina–Jaime's conviction of being found in the United States in violation of 8 U.S.C. § 1326(a)(2) were established and there was a factual basis for his guilty plea.[5]

■ By recognizing that a conviction under § 1326(a)(2) does not require the government to prove that a defendant effected an illegal entry, we do not depart from our long-standing rule that § 1326 requires the government to prove the defendant committed an unlawful act. *United ed States v. Cupa–Guillen*, 34 F.3d 860, 863 (9th Cir.1994) ("the statute does not set forth a status crime"). Nor do we depart from our holding that § 1326(a)(2) is not a strict liability offense. *Id.; see Pena–Cabanillas v. United States*, 394 F.2d 785, 790 (9th Cir.1968). Rather, being found in the United States in violation of § 1326(a)(2) is a crime of general intent, which requires the government to prove beyond a reasonable doubt that the defendant "voluntarily" committed an unlawful act. *See Pena–Cabanillas*, 394 F.2d at 790. The government satisfied its burden in this case. Pina–Jaime knowingly and wilfully committed the act of staying in the United States without permission of the Attorney General following his one-day parole into this country.

## IV.

■ Pina–Jaime also contends that his sentence is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the government did not prove his prior convictions to a jury beyond a reasonable doubt. This argument is foreclosed by recent decisions of this Court. *See, e.g., United States v. Pacheco–Zepeda*, 234 F.3d 411, 415 (9th Cir.2001) (holding that "the government was not required to include[the defendant's] prior aggravated felony convictions in the indictment, submit them to a jury, or prove them beyond a reasonable doubt, and the district court properly considered such convictions in sentencing.").

**AFFIRMED.**

---

**5.** This conclusion is not inconsistent with our decision in *Siu Fung Luk v. Rosenberg*, 409 F.2d 555 (9th Cir.1969). There, we held that a paroled alien who overstayed the specified term of his parole was subject to exclusion proceedings and could not avail himself of the more advantageous protections in deportation proceedings available to aliens who had entered the country. *Id.* at 558. *Luk* involved a civil proceeding in which the alien sought a deportation hearing, *id.* at 557; the question of a previously deported alien's criminal liability under 8 U.S.C. § 1326(a)(2) never arose.